# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| VELOCITY COMMUNICATION TECHNOLOGIES, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> JUNIPER NETWORKS, INC., <br><br> *Defendant.* | Civil Action No._____ <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Velocity Communication Technologies, LLC ("Velocity" or "Plaintiff") brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos.: 8,675,570 (the "'570 patent"); 8,260,213 (the "'213 patent"); 8,238,832 (the "'832 patent"); 8,270,343 (the "'343 patent"); 8,213,870 (the "'870 patent"); 8,644,765 (the "'765 patent"); 9,083,401 (the "'401 patent"); 10,200,096 (the "'096 patent"); 8,238,859 (the "'859 patent"); 8,265,573 (the "'573 patent"); and 9,596,648 (the "'648 patent") (collectively, the "patents-in-suit"). Defendant Juniper Networks, Inc. ("Juniper" or "Defendant") infringes the patents-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

## PLAINTIFF

1.       Plaintiff Velocity Communication Technologies, LLC ("Plaintiff" or "Velocity") is a Delaware limited liability company that holds a pool of over 220 patent assets across 46 distinct patent families developed by leading pioneers from across the globe in the field of wireless communications, including Marvell Technology, Inc.; NXP Semiconductors N.V.; Freescale Semiconductor, Inc.; Blackberry Ltd.; and ZTE Corporation.

2.      Plaintiff's patent pool includes a significant number of wireless networking patents essential to, and necessarily infringed by, the manufacture, sale, and operation of devices in compliance with the Institute of Electrical and Electronics Engineers (IEEE) 802.11ax standard, also referred to as the Wi-Fi 6 standard ("802.11ax Standard").  Plaintiff's patent portfolio not only includes each of the at-issue United States patents, but also an extensive number of additional U.S. patents not at issue in this case as well as numerous patents issued by the European Patent Office and the China National Intellectual Property Administration, among other foreign patent-issuing government bodies.

3.      Each of the patents-in-suit is necessarily practiced when devices operate in compliance with the 802.11ax Standard.

### DEFENDANT

4.      Defendant Juniper Networks, Inc. ("Juniper"), is a Delaware corporation.  Juniper may be served through its registered agent CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75021.  Juniper is registered to do business in the State of Texas.

5.      Juniper conducts business operations within the Eastern District of Texas where it sells, develops, and/or markets its products including facilities at its Plano, Texas facilities.  On information and belief, Juniper's Plano, Texas facilities are located at 5830 Granite Parkway, Suite 850, Plano, Texas 75024.

### JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Juniper in this action because Juniper has committed acts within the Eastern District of Texas giving rise to this action and has established

minimum contacts with this forum such that the exercise of jurisdiction over Juniper would not offend traditional notions of fair play and substantial justice.  Defendant Juniper, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit.  Moreover, Juniper is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas.

8.      Venue is proper in this District under 28 U.S.C. § 1400(b).  Defendant Juniper is registered to do business in the State of Texas, has offices in this judicial District, has transacted business in the Eastern District of Texas, and has committed acts of direct and indirect infringement in the Eastern District of Texas.

9.      Juniper has a regular and established place of business in this District and has committed acts of infringement in this District.  Juniper has also committed acts of infringement in this District by commercializing, marketing, selling, distributing, testing, and servicing the Accused Products.  Juniper maintains an office in Plano, Texas, which is located within this judicial District.  Juniper employs full-time personnel such as sales personnel and engineers in this District.  Juniper is presently recruiting several additional employees for its Plano, Texas offices on Juniper's website:



*Jobs at Juniper Networks*, JUNIPER NETWORKS WEBSITE, *available at*: https://jobs.juniper.net/
careers?location=Plano%2C%20TX%2C%20United%20States&pid=893893380277&domain=j
uniper.net&sort_by=relevance&location_distance_km=0&triggerGoButtot=true (last accessed
May 20, 2025).

10.     This Court has personal jurisdiction over Juniper.  Juniper has conducted and does
conduct business within the State of Texas.   Juniper, directly or through subsidiaries or
intermediaries (including distributors, retailers, and others), ships, distributes, makes, uses, offers
for sale, sells, imports, and/or advertises (including by providing an interactive web page) its
products and/or services in the United States and the Eastern District of Texas and/or contributes
to and actively induces its customers to ship, distribute, make, use, offer for sale, sell, import,
and/or advertise (including the provision of an interactive web page) infringing products and/or
services in the United States and the Eastern District of Texas.   Juniper, directly and through
subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and
voluntarily placed one or more of its infringing products and/or services, as described below, into
the stream of commerce with the expectation that those products will be purchased and used by

customers and/or consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be made, used, sold, offered for sale, purchased, and/or imported by customers and/or consumers in the Eastern District of Texas.  Juniper has committed acts of patent infringement within the Eastern District of Texas.  Juniper interacts with customers in Texas, including through visits to customer sites in Texas.  Through these interactions, Juniper directly infringes the patents-in-suit.  Juniper also interacts with customers who sell the Accused Products into Texas, knowing that these customers will sell the Accused Products into Texas, either directly or through intermediaries.

11.    Juniper has minimum contacts with this District such that the maintenance of this action within this District would not offend traditional notions of fair play and substantial justice.  Thus, the Court therefore has personal jurisdiction over Juniper.

## THE 802.11AX (WI-FI 6) STANDARD

12.    Wireless Local Area Networks (WLANs) have become a foundational technology in modern digital communications.  This is largely driven by the increasing ubiquity of mobile computing devices, streaming services, and cloud-based applications.  WLANs operate over unlicensed spectrum bands, primarily in the 2.4 GHz and 5 GHz bands.  More recently, the 6 GHz band has been made available for Wi-Fi use in certain regions of the world.

13.    To ensure that users are able to communicate with one another despite the use of different networking equipment and end-user devices manufactured by different companies, it is important that WLAN operation is standardized.  This ensures interoperability, reliability, and global adoption of Wi-Fi technologies.  In the field of WLAN operation, standardization is organized through the Institute of Electrical and Electronics Engineers (IEEE), and more

specifically under the 802.11 family of specifications, which is titled, "*Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications*."

14.     The original IEEE 802.11 standard was published in 1997 and specified data rates of 1Mbps and 2Mbps using the 2.4 GHz band and three PHY layer technologies: infrared, frequency-hopping spread spectrum (FHSS), and direct-sequence spread spectrum (DSSS). However, because of this relatively low data throughput, adoption was limited.  Over the years, the 802.11 standard has been amended and enhanced with the contribution of additional technologies by leading companies that operate in the WLAN field.

15.     In 1999, 802.11b and 802.11a were published that increased maximum throughput to 11Mbps in the 2.4 GHz band and 54 Mbps in the 5 GHz band, respectively.  In 2003, 802.11g was published that combined the higher (54 Mbps) throughput rate of 802.11a with the backward compatibility in the 2.4 GHz band.  This led to widespread adoption of Wi-Fi as a ubiquitous technology.

16.     In 2009, 802.11n was released with High Throughput (HT) enhancements.  802.11n introduced multiple-input, multiple-output (MIMO) antenna systems, channel bonding, frame aggregation, and several PHY/MAC enhancements to support data throughput rates up to 600 Mbps, introducing a significant leap in the technical capabilities of Wi-Fi systems.

17.     In 2013, IEEE introduced 802.11ac, which introduced Very High Throughput (VHT) features in the 5 GHz band.  This amendment to the 802.11 standard expanded MIMO capabilities to support up to 8 spatial streams and supported multi-user MIMO in the downlink. These advancements improved network performance yet again in both home/personal as well as enterprise Wi-Fi networks.

18.     Despite these improvements over the years, challenges remained.  Due to the increasing prevalence of Wi-Fi-connected devices in daily life, legacy Wi-Fi technologies suffered from significant performance degradation as more devices competed for access to a given wireless network.

19.     To address the growing demands for higher capacity and more predictable performance in dense deployment scenarios, the IEEE formed Task Group AX in 2014.  The group's mission was to develop a High Efficiency (HE) WLAN standard to improve throughput-per-area and reduce contention overhead.

20.     The standard resulting from this work is the 802.11ax Standard, which is commonly known as the Wi-Fi 6 standard.  The 802.11ax Standard represented a major architectural upgrade to Wi-Fi networks.  Key innovations in the 802.11ax Standard include Orthogonal Frequency Division Multiple Access (OFDMA) (allowing simultaneous transmissions to multiple users by subdividing channels); uplink and downlink multiple-user, multiple input, multiple output (MU-MIMO); Beamforming (a key innovation that improves signal strength and spatial efficiency by directing wireless transmissions toward specific devices rather than broadcasting in all directions); and improved MAC layer efficiency.  The first draft of the 802.11ax Standard was published in March 2016.  The Standard then underwent multiple revisions and industry trials before final approval by the IEEE on February 9, 2021 as IEEE Std 802.11ax-2021.

21.     Several leading wireless communication technology companies contributed technologies to the 802.11ax Standard.  Among the companies to substantially contribute to the 802.11ax Standard are: Marvell Technology, Inc.; NXP Semiconductors N.V.; and ZTE Corporation.  Velocity owns a portfolio of patents developed by these companies and reflecting

their substantial contributions to the groundbreaking leap forward in WLAN technology reflected in the 802.11ax Standard now widely adopted by industry.

### JUNIPER'S KNOWLEDGE OF THE PATENTS-IN-SUIT

22.    Juniper has known that NXP possessed patents relating to the 802.11ax Standard since at least September 29, 2020, which is when NXP submitted a Letter of Assurance for essential patent claims ("LOA") to the IEEE indicating that NXP owns patents that may be essential to the implementation of 802.11ax.  Further, Juniper has known that ZTE was the developer of patented technology relating to the 802.11ax Standard at least since March 4, 2024, which is when ZTE submitted a LOA to the IEEE indicating that it owned patents that may be essential to the implementation of the 802.11ax Standard.

23.    Juniper has also known that Velocity was the owner of the patents-in-suit since at least April 15, 2025 when counsel for Velocity sent Juniper a letter, attached hereto as Exhibit 23. In that April 15 letter, Velocity explained that its patent portfolio covers technologies "incorporated into the IEEE 802.11ax (*i.e.*, Wi-Fi 6) standard, including: Uplink Multi-User Multiple-Input Multiple-Output (UL MU-MIMO); Basic Service Set (BSS) Coloring; Target Wake Time (TWT); Orthogonal Frequency Division Multiple Access (OFDMA); Longer OFDM Symbol Duration; Beamforming; and Transmit Power Control (TPC)."  Velocity further explained that its patents "also cover[] technologies included in the mandatory sections of the Wi-Fi 6E extension of the 802.11ax standard" and invited Juniper to license the patents-in-suit.  *Id.*

24.    In addition, and at minimum, Juniper was aware of and has been aware of the patents-in-suit as of the date of filing of this Complaint.

## THE ASSERTED PATENTS

### U.S. PATENT NO. 8,675,570

25.     U.S. Patent No. 8,675,570 (the "'570 patent") entitled, *Scalable OFDM and OFDMA Bandwidth Allocation in Communication Systems*, was filed on March 24, 2008.  The '570 patent claims priority to U.S. Provisional Patent Application No. 60/896,859, which was filed on March 23, 2007.  The '570 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,031 days.  A true and correct copy of the '570 patent is attached hereto as Exhibit 1.

26.     The '570 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '570 patent.

27.     The '570 patent family has been cited by 90 United States and international patents and patent applications as relevant prior art.  The following companies and research institutions have cited the '570 patent as relevant prior art:

- Qualcomm Incorporated
- Samsung Electronics Co., Ltd.
- Intel IP Corporation
- Apple Inc.
- Microsoft Technology Licensing, LLC
- LG Electronics Inc.
- Nokia Solutions and Networks Oy
- NEC Corporation
- Telefonaktiebolaget LM Ericsson
- Motorola Mobility LLC
- Interdigital CE Patent Holdings
- NXP BV
- Wi-Lan, Inc.
- Huawei Technologies Co., Ltd.
- Mediatek Inc.
- Panasonic Holdings
- Sharp Kabushiki Kaisha
- Fujitsu Mobile Communications Limited
- Futurewei Technologies, Inc.
- Electronics and Telecommunications Research Institute

**U.S. PATENT NO. 8,260,213**

28.     U.S. Patent No. 8,260,213 (the "'213 patent") entitled, *Method and Apparatus to Adjust a Tunable Reactive Element*, was filed on September 15, 2009.  The '213 patent claims priority to U.S. Provisional Patent Application No. 61/192,091, which was filed on September 15, 2008.  The '213 patent is subject to a 35 U.S.C. § 154(b) term extension of 414 days.  A true and correct copy of the '213 patent is attached hereto as Exhibit 2.

29.     The '213 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '213 patent.

30.     The '213 patent family has been cited by several United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to STMicroelectronics NV, Raytheon Company, and BlackBerry Ltd. have cited the '213 patent family as relevant prior art.

**U.S. PATENT NO. 8,238,832**

31.     U.S. Patent No. 8,238,832 (the "'832 patent") entitled, *Antenna Optimum Beam Forming for Multiple Protocol Coexistence on a Wireless Device*, was filed on August 27, 2008.  The '832 patent claims priority to Provisional Application No. 60/968,467, which was filed on August 28, 2007.  The '832 patent is subject to a 35 U.S.C. § 154(b) term extension of 661 days.  A true and correct copy of the '832 patent is attached hereto as Exhibit 3.

32.     The '832 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '832 patent.

33.     The '832 patent family has been cited by 18 United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to the following companies and research institutions have cited the '832 patent family as relevant prior art:

- Intel Corporation

COMPLAINT FOR PATENT INFRINGEMENT

- Sprint Communications L.P.
- Hewlett Packard Enterprise Development LP
- Kabushiki Kaisha Toshiba
- Panasonic Avionics Corporation
- Siemens Aktiengesellschaft
- Texas Instruments Incorporated
- Qualcomm Incorporated
- Apple Inc.

**U.S. PATENT NO. 8,270,343**

34.     U.S. Patent No. 8,270,343 (the "'343 patent") entitled, *Broadcasting of Textual and Multimedia Information*, was filed as U.S. Patent Application No. 11/722,295 on June 20, 2007. The '343 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP04/14906, which was filed on December 20, 2004.  The '343 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,486 days.  A true and correct copy of the '343 patent is attached hereto as Exhibit 4.

35.     The '343 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '343 patent.

36.     The '343 patent family has been cited by at least 27 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '343 patent family as relevant prior art:

- Telefonaktiebolaget LM Ericsson
- Samsung Electronics Co., Ltd.
- Huawei Technologies Co., Ltd.
- Cisco Technology, Inc.
- Qualcomm Incorporated

**U.S. PATENT NO. 8,213,870**

37.     U.S. Patent No. 8,213,870 (the "'870 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on October 15, 2008.  The '870 patent claims

priority to U.S. Provisional patent Application No. 60/980,036, which was filed on October 15, 2007.  A true and correct copy of the '870 patent is attached hereto as Exhibit 5.

38.    The '870 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '870 patent.

39.    The '870 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '870 patent family as relevant prior art:

- Electronics and Telecommunications Research Institute
- NEC Laboratories America, Inc.
- Qualcomm Incorporated
- Samsung Electronics Co., Ltd.
- Intel Corporation
- Ruckus Wireless, Inc.
- Newracom, Inc.
- Telefonaktiebolaget LM Ericsson
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Amazon Technologies, Inc.

**U.S. PATENT NO. 8,644,765**

40.    U.S. Patent No. 8,644,765 (the "'765 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on June 29, 2012.  The '765 patent is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870, and also claims priority to U.S. Provisional Application No. 60/980,036, which was filed October 15, 2007.  A true and correct copy of the '765 patent is attached hereto as Exhibit 6.

41.    The '765 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '765 patent.

42.    The '765 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.    Specifically, patents issued to the following companies and research institutions have cited the '765 patent family as relevant prior art:

- Amazon Technologies, Inc.
- Samsung Electronics Co., Ltd.
- Qualcomm Incorporated
- Intel Corporation
- Arris Enterprises LLC
- Panasonic Avionics Corporation
- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Newracom, Inc.

## U.S. PATENT NO. 9,083,401

43.    U.S. Patent No. 9,083,401 (the "'401 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on February 3, 2014.    The '401 patent is a continuation of U.S. Patent Application No. 13/539,131, which was filed on June 29, 2012 and issued as U.S. Patent No. 8,644,765, which is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870.    The '401 patent also claims priority to U.S. Provisional Application No. 60/980,036, which was filed on October 15, 2007.    A true and correct copy of the '401 patent is attached hereto as Exhibit 7.

44.    The '401 patent has been in full force and effect since its issuance.    Velocity owns by assignment the entire right, title, and interest in and to the '401 patent.

45.    The '401 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.    Specifically, patents issued to the following companies and research institutions have cited the '401 patent family as relevant prior art:

- Amazon Technologies, Inc.
- Samsung Electronics Co., Ltd.

- Qualcomm Incorporated
- Intel Corporation
- Arris Enterprises LLC
- Panasonic Avionics Corporation
- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Newracom, Inc.

**U.S. PATENT NO. 10,200,096**

46.    U.S. Patent No. 10,200,096 (the "'096 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on March 13, 2017. The '096 patent is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870, and also claims priority to U.S. Provisional Patent Application No. 60/980,036, which was filed on October 15, 2007. The '096 patent is subject to a 35 U.S.C. § 154(b) term extension of 11 days. A true and correct copy of the '096 patent is attached hereto as Exhibit 8.

47.    The '096 patent has been in full force and effect since its issuance. Velocity owns by assignment the entire right, title, and interest in and to the '096 patent.

48.    The '096 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art. Specifically, patents issued to the following companies and research institutions have cited the '096 patent family as relevant prior art:

- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Qualcomm Incorporated
- Intel Corporation
- Ruckus Wireless, Inc.
- Newracom, Inc.
- Telefonaktiebolaget LM Ericsson
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.

- Amazon Technologies, Inc.

**U.S. PATENT NO. 8,238,859**

49.     U.S. Patent No. 8,238,859 (the "'859 patent") entitled, *Radio Receiver*, was filed as U.S. Patent Application No. 12/281,987 on September 6, 2008.  The '859 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP07/50774, which was filed on March 8, 2007.  The '859 patent claims priority to European Patent Application No. EP06110905, filed on March 9, 2006.  The '859 patent is subject to a 35 U.S.C. § 154(b) term extension of 834 days.  A true and correct copy of the '859 patent is attached hereto as Exhibit 9.

50.      The '859 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '859 patent.

51.     The '859 patent family has been cited by several United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to Trend Micro Co., Ltd. and Microchip Technology Incorporated have cited the '859 patent family as relevant prior art.

**U.S. PATENT NO. 8,265,573**

52.     U.S. Patent No. 8,265,573 (the "'573 patent") entitled, *Wireless Subscriber Communication Unit and Method of Power Control with Back-Off Therefore*, was filed as U.S. Patent Application No. 12/096,550 on June 6, 2008.  The '573 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP05/56593, which was filed on December 7, 2005.  The '573 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,117 days.  A true and correct copy of the '573 patent is attached hereto as Exhibit 10.

53.     The '573 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '573 patent.

54.    The '573 patent family has been cited by several United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '573 patent family as relevant prior art:

- Panasonic Holdings Corporation
- ViaSat, Inc.
- Rockwell Collins, Inc.
- Chi Mei Communication Systems, Inc.
- Nordic Semiconductor ASA

**U.S. PATENT NO. 9,596,648**

55.    U.S. Patent No. 9,596,648 (the "'648 patent") entitled, *Unified Beacon Format*, was filed on June 28, 2013.  The '648 patent claims priority to U.S. Provisional Patent Application Nos. 61/666,156; 61/680,628; and 61/700,148, which were filed on June 29, 2012; August 7, 2012; and September 12, 2012, respectively.   A true and correct copy of the '648 patent is attached hereto as Exhibit 11.

56.    The '648 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '648 patent.

57.    The '648 patent family has been cited by 24 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '648 patent family as relevant prior art:

- Huawei Technologies Co., Ltd.
- Intel Corporation
- Qualcomm Incorporated
- Texas Instruments Incorporated
- Mediatek Inc.
- ZTE Corporation
- Singapore Agency for Science, Technology, and Research
- International Business Machines Corporation
- Ericsson Sweden Ltd.
- The Wireless Registry, Inc.
- Sling Media, LLC

### COUNT I
### INFRINGEMENT OF U.S. PATENT NO. 8,675,570

58.     Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

59.     Juniper makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'570 Accused Product(s)").

60.     Juniper designs, makes, uses, sells, and/or offers for sale the '570 Accused Products in the United States.

61.     One or more Juniper subsidiaries and/or affiliates use the '570 Accused Products in regular business operations.

62.     Juniper has directly infringed and continues to directly infringe the '570 patent by, among other things, making, using, offering for sale, and/or selling the '570 Accused Products. The functionality recited in the '570 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '570 Accused Products infringe at least claim 1 of the '570 patent can be found in the chart attached hereto as Exhibit 12.

63.     The '570 Accused Products are available to businesses and individuals throughout the United States.

64.     The '570 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

65.     By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '570 Accused

Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '570 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 12 applies each limitation of claim 1 of the '570 patent to the '570 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '570 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '570 patent.  Exhibit 12 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 12 that is mapped to the '570 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

66.    Juniper also indirectly infringes the '570 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '570 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

67.    Juniper has had knowledge of the '570 patent since at least shortly after March 4, 2024, when ZTE submitted a Letter of Assurance to IEEE notifying IEEE and industry participants that ZTE developed patented technologies incorporated into the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '570 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

68.    Alternatively, Juniper has had knowledge of the '570 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '570 patent and knew of its infringement, including by way of this lawsuit.

69.    Juniper intended to induce patent infringement by third-party customers and users of the '570 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the accused products would infringe the '570 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '570 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '570 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '570 patent, including at least claim 1, and Juniper further advertises the '570 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '570 patent.  On information and belief, Juniper advertises all of the '570 Accused Products as complying with the 802.11ax Standard.[1]  By providing instruction and training to customers and end-users on how to use the '570 Accused Products in a manner that directly infringes one or more claims of the '570 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '570 patent.  Juniper engaged in such inducement to promote the sales of the '570 Accused Products, e.g., through Juniper user manuals,

---

[1]  *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '570 patent.  Accordingly, Juniper has induced and continues to induce users of the '570 Accused Products to use the '570 Accused Products in their ordinary and customary way to infringe the '570 patent, knowing that such use constitutes infringement of the '570 patent.

70.     Juniper also indirectly infringes the '570 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '570 Accused Products and causing the '570 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '570 Accused Products, such that the '570 patent is directly infringed.  The accused components within the '570 Accused Products are material to the invention of the '570 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '570 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '570 patent and with intent, or willful blindness, that they cause the direct infringement of the '570 patent.

71.     As described above, Juniper knew that ZTE was the company responsible for developing technologies incorporated into the 802.11ax Standard and that ZTE patented those pioneering technologies since at least March 4, 2024, when ZTE submitted a Letter of Assurance to IEEE.  The '570 patent is a patent originally assigned to ZTE that resulted from ZTE's development of OFDMA technology incorporated into the 802.11ax Standard.  Juniper has also known that Velocity was the owner by assignment of the '570 patent since at least April 15, 2025,

when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

72.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

73.    Juniper is utilizing the technology claimed in the '570 patent without paying a reasonable royalty.  Juniper is infringing the '570 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

74.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '570 patent.

75.    As a result of Juniper's infringement of the '570 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

## COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 8,260,213

76.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

77.    Juniper makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the

following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'213 Accused Product(s)").

78.     Juniper designs, makes, uses, sells, and/or offers for sale the '213 Accused Products in the United States.

79.     One or more Juniper subsidiaries and/or affiliates use the '213 Accused Products in regular business operations.

80.     Juniper has directly infringed and continues to directly infringe the '213 patent by, among other things, making, using, offering for sale, and/or selling the '213 Accused Products. The functionality recited in the '213 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '213 Accused Products infringe at least claim 1 of the '213 patent can be found in the chart attached hereto as Exhibit 13.

81.     The '213 Accused Products are available to businesses and individuals throughout the United States.

82.     The '213 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

83.     By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '213 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '213 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 13 applies each limitation of claim 1 of the '213 patent to the '213 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '213 Accused Products obtained through discovery.   This chart is not intended to limit

Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '213 patent.  Exhibit 13 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 13 that is mapped to the '213 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

84.    Juniper also indirectly infringes the '213 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '213 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

85.    Juniper has had knowledge of the '213 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '213 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

86.    Alternatively, Juniper has had knowledge of the '213 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '213 patent and knew of its infringement, including by way of this lawsuit.

87.    Juniper intended to induce patent infringement by third-party customers and users of the '213 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the accused products

would infringe the '213 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '213 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '213 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '213 patent, including at least claim 1, and Juniper further advertises the '213 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '213 patent.  On information and belief, Juniper advertises all of the '213 Accused Products as complying with the 802.11ax Standard.[2]  By providing instruction and training to customers and end-users on how to use the '213 Accused Products in a manner that directly infringes one or more claims of the '213 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '213 patent.  Juniper engaged in such inducement to promote the sales of the '213 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '213 patent.  Accordingly, Juniper has induced and continues to induce users of the '213 Accused Products to use the '213 Accused Products in their ordinary and customary way to infringe the '213 patent, knowing that such use constitutes infringement of the '213 patent.

88.    Juniper also indirectly infringes the '213 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this

---

[2]  *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '213 Accused Products and causing the '213 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '213 Accused Products, such that the '213 patent is directly infringed.  The accused components within the '213 Accused Products are material to the invention of the '213 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '213 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '213 patent and with intent, or willful blindness, that they cause the direct infringement of the '213 patent.

89.     As described above, Juniper knew that NXP possessed patents, including the '213 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '213 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

90.     Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

91.     Juniper is utilizing the technology claimed in the '213 patent without paying a reasonable royalty.  Juniper is thus infringing the '213 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

92.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '213 patent.

93.     As a result of Juniper's infringement of the '213 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 8,238,832**

94.     Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

95.     Juniper makes, sells, offers to sell, imports, and/or uses all Access Points[3] ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not

---

[3] An IEEE 802.11ax Access Point (AP) (802.11ax § 3.2) is defined by the 802.11ax Standard as a High Efficiency (HE) station (STA) (§ 4.3.15a) that establishes and centrally coordinates Basic Service Set (BSS) infrastructure (§§ 3.2, 26.17.1). Mandatory Physical Layer (PHY) capabilities of an 802.11ax Access Point include Downlink/Uplink Orthogonal Frequency Division Multiple Access (OFDMA) and Downlink Multi-User Multiple Input, Multiple Output (DL MU-MIMO) for APs supporting 4 or more spatial streams over the entire PPDU bandwidth.  Such APs shall also set the MU Beamformer subfield to 1 (§§ 4.3.15a, 27.1.1, 26.7.2).  When operating in the 6 GHz band, APs shall support at least 80 MHz channel width, enable spectrum management (dot11SpectrumManagementRequired = true), and enable FILS Discovery frame omission (dot11FILSOmitReplicateProbeResponses = true) (§ 26.17.2.1).  Mandatory Medium Access Control (MAC) capabilities of an 802.11ax Access Point include HE control field operations (dot11HEControlFieldOptionImplemented = true) (§ 10.8), OMI responder (dot11OMIOptionImplemented = true) (§§ 4.3.15a, 26.9.1), and individual TWT responder functionality (§§ 4.3.15a, 26.8.1).

limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'832 Accused Product(s)").

96.     Juniper designs, makes, uses, sells, and/or offers for sale the '832 Accused Products in the United States.

97.     One or more Juniper subsidiaries and/or affiliates use the '832 Accused Products in regular business operations.

98.     Juniper has directly infringed and continues to directly infringe the '832 patent by, among other things, making, using, offering for sale, and/or selling the '832 Accused Products. The functionality recited in the '832 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '832 Accused Products infringe at least claim 18 of the '832 patent can be found in the chart attached hereto as Exhibit 14.

99.     The '832 Accused Products are available to businesses and individuals throughout the United States.

100.     The '832 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

101.     By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '832 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '832 patent, including at least claim 18 pursuant to 35 U.S.C. § 271(a).   Exhibit 14 applies each limitation of claim 18 of the '832 patent to the '832 Accused Products.   Velocity provides this infringement analysis without the benefit of information

about the '832 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '832 patent.  Exhibit 14 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 14 that is mapped to the '832 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

102.    Juniper also indirectly infringes the '832 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '832 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

103.    Juniper has had knowledge of the '832 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '832 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

104.    Alternatively, Juniper has had knowledge of the '832 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '832 patent and knew of its infringement, including by way of this lawsuit.

105.    Juniper intended to induce patent infringement by third-party customers and users of the '832 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper

specifically intended and was aware that the normal and customary use of the accused products would infringe the '832 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '832 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '832 Accused Products that have the capability of operating in a manner that infringes one or more of the claims of the '832 patent, including at least claim 18, and Juniper further advertises the '832 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '832 patent.  On information and belief, Juniper advertises all of the '832 Accused Products as complying with the 802.11ax Standard.[4]  By providing instruction and training to customers and end-users on how to use the '832 Accused Products in a manner that directly infringes one or more claims of the '832 patent, including at least claim 18, Juniper specifically intended to induce infringement of the '832 patent.  Juniper engaged in such inducement to promote the sales of the '832 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '832 Accused Products to infringe the '832 patent.  Accordingly, Juniper has induced and continues to induce users of the '832 Accused Products to use the '832 Accused Products in their ordinary and customary way to infringe the '832 patent, knowing that such use constitutes infringement of the '832 patent.

---

[4] *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap64-access-point.html (last accessed May 28, 2025).

106.    Juniper also indirectly infringes the '832 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '832 Accused Products and causing the '832 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '832 Accused Products, such that the '832 patent is directly infringed.  The accused components within the '832 Accused Products are material to the invention of the '832 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '832 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '832 patent and with intent, or willful blindness, that they cause the direct infringement of the '832 patent.

107.    As described above, Juniper knew that NXP possessed patents, including the '832 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '832 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

108.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-

in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

109.    Juniper is utilizing the technology claimed in the '832 patent without paying a reasonable royalty.  Juniper is thus infringing the '832 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

110.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '832 patent.

111.    As a result of Juniper's infringement of the '832 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

**COUNT IV**
**INFRINGEMENT OF U.S. PATENT NO. 8,270,343**

112.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

113.    Juniper makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'343 Accused Product(s)").

114.    Juniper designs, makes, uses, sells, and/or offers for sale the '343 Accused Products in the United States.

115.    One or more Juniper subsidiaries and/or affiliates use the '343 Accused Products in regular business operations.

116.    Juniper has directly infringed and continues to directly infringe the '343 patent by, among other things, making, using, offering for sale, and/or selling the '343 Accused Products. The functionality recited in the '343 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '343 Accused Products infringe at least claim 10 of the '343 patent can be found in the chart attached hereto as Exhibit 15.

117.    The '343 Accused Products are available to businesses and individuals throughout the United States.

118.    The '343 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

119.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '343 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '343 patent, including at least claim 10 pursuant to 35 U.S.C. § 271(a).  Exhibit 15 applies each limitation of claim 10 of the '343 patent to the '343 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '343 Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '343 patent.  Exhibit 15 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 15 that is mapped to the '343 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

120.    Juniper also indirectly infringes the '343 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '343 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

121.    Juniper has had knowledge of the '343 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '343 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

122.    Alternatively, Juniper has had knowledge of the '343 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '343 patent and knew of its infringement, including by way of this lawsuit.

123.    Juniper intended to induce patent infringement by third-party customers and users of the '343 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the '343 Accused Products would infringe the '343 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '343 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '343 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '343 patent, including at least claim 10, and Juniper further advertises

the '343 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '343 patent.  On information and belief, Juniper advertises all of the '343 Accused Products as complying with the 802.11ax Standard.[5]  By providing instruction and training to customers and end-users on how to use the '343 Accused Products in a manner that directly infringes one or more claims of the '343 patent, including at least claim 10, Juniper specifically intended to induce infringement of the '343 patent.  Juniper engaged in such inducement to promote the sales of the '343 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '343 Accused Products to infringe the '343 patent.  Accordingly, Juniper has induced and continues to induce users of the '343 Accused Products to use the '343 Accused Products in their ordinary and customary way to infringe the '343 patent, knowing that such use constitutes infringement of the '343 patent.

124.    Juniper also indirectly infringes the '343 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '343 Accused Products and causing the '343 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '343 Accused Products, such that the '343 patent is directly infringed.  The accused components within the '343 Accused Products are material to the invention

---

[5]  *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

of the '343 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '343 patent.   Juniper has performed and continues to perform these affirmative acts with knowledge of the '343 patent and with intent, or willful blindness, that they cause the direct infringement of the '343 patent.

125.    As described above, Juniper knew that NXP possessed patents, including the '343 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '343 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

126.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.   At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.   Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

127.    Juniper is thus infringing the '343 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

128.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '343 patent.

129.    As a result of Juniper's infringement of the '343 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

### COUNT V
### INFRINGEMENT OF U.S. PATENT NO. 8,213,870

130.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

131.    Juniper makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'870 Accused Product(s)").

132.    Juniper designs, makes, uses, sells, and/or offers for sale the '870 Accused Products in the United States.

133.    One or more Juniper subsidiaries and/or affiliates use the '870 Accused Products in regular business operations.

134.    Juniper has directly infringed and continues to directly infringe the '870 patent by, among other things, making, using, offering for sale, and/or selling the '870 Accused Products. The functionality recited in the '870 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '870 Accused Products infringe at least claim 1 of the '870 patent can be found in the chart attached hereto as Exhibit 16.

135.    The '870 Accused Products are available to businesses and individuals throughout the United States.

136.    The '870 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

137.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '870 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '870 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 16 applies each limitation of claim 1 of the '870 patent to the '870 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '870 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '870 patent.  Exhibit 16 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 16 that is mapped to the '870 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

138.    Juniper also indirectly infringes the '870 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '870 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

139.    Juniper has had knowledge of the '870 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may

be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '870 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

140.     Alternatively, Juniper has had knowledge of the '870 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '870 patent and knew of its infringement, including by way of this lawsuit.

141.     Juniper intended to induce patent infringement by third-party customers and users of the '870 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the accused products would infringe the '870 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '870 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '870 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '870 patent, including at least claim 1, and Juniper further advertises the '870 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '870 patent.  On information and belief, Juniper advertises all of the '870 Accused Products as complying with the 802.11ax Standard.[6]  By providing instruction and

---

[6] *AP12 Access Point*, Juniper Website, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, Juniper Website, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, Juniper Website, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, Juniper Website, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

training to customers and end-users on how to use the '870 Accused Products in a manner that directly infringes one or more claims of the '870 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '870 patent.  Juniper engaged in such inducement to promote the sales of the '870 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials, to actively induce the users of the accused products to infringe the '870 patent.  Accordingly, Juniper has induced and continues to induce users of the '870 Accused Products to use the '870 Accused Products in their ordinary and customary way to infringe the '870 patent, knowing that such use constitutes infringement of the '870 patent.

142.    Juniper also indirectly infringes the '870 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '870 Accused Products and causing the '870 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '870 Accused Products, such that the '870 patent is directly infringed.  The accused components within the '870 Accused Products are material to the invention of the '870 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '870 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '870 patent and with intent, or willful blindness, that they cause the direct infringement of the '870 patent.

143.    As described above, Juniper knew that NXP possessed patents, including the '870 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE

indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '870 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

144.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

145.    Juniper is utilizing the technology claimed in the '870 patent without paying a reasonable royalty.  Juniper is thus infringing the '870 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

146.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '870 patent.

147.    As a result of Juniper's infringement of the '870 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

### COUNT VI
### INFRINGEMENT OF U.S. PATENT NO. 8,644,765

148.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

COMPLAINT FOR PATENT INFRINGEMENT

149.    Juniper makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'765 Accused Product(s)").

150.    Juniper designs, makes, uses, sells, and/or offers for sale the '765 Accused Products in the United States.

151.    One or more Juniper subsidiaries and/or affiliates use the '765 Accused Products in regular business operations.

152.    Juniper has directly infringed and continues to directly infringe the '765 patent by, among other things, making, using, offering for sale, and/or selling the '765 Accused Products. The functionality recited in the '765 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '765 Accused Products infringe at least claim 1 of the '765 patent can be found in the chart attached hereto as Exhibit 17.

153.    The '765 Accused Products are available to businesses and individuals throughout the United States.

154.    The '765 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

155.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '765 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '765 patent, including at least claim 1 pursuant to 35 U.S.C.

§ 271(a).  Exhibit 17 applies each limitation of claim 1 of the '765 patent to the '765 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '765 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '765 patent.  Exhibit 17 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 17 that is mapped to the '765 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

156.    Juniper also indirectly infringes the '765 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '765 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

157.    Juniper has had knowledge of the '765 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '765 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

158.    Alternatively, Juniper has had knowledge of the '765 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '765 patent and knew of its infringement, including by way of this lawsuit.

159.    Juniper intended to induce patent infringement by third-party customers and users of the '765 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the '765 Accused Products would infringe the '765 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '765 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '765 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '765 patent, including at least claim 1, and Juniper further advertises the '765 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '765 patent.  On information and belief, Juniper advertises all of the '765 Accused Products as complying with the 802.11ax Standard.[7]  By providing instruction and training to customers and end-users on how to use the '765 Accused Products in a manner that directly infringes one or more claims of the '765 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '765 patent.  Juniper engaged in such inducement to promote the sales of the '765 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '765 Accused Products to infringe the '765 patent.  Accordingly, Juniper has induced and continues to induce users of the '765 Accused Products to use the '765 Accused Products in their

---

[7]  *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*:  https://www.juniper.net/us/en/products/access-points/ap24-access-point.html  (last accessed  May  28,  2025);  *AP45  Access  Point*,  JUNIPER  WEBSITE,  *available  at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

ordinary and customary way to infringe the '765 patent, knowing that such use constitutes infringement of the '765 patent.

160.    Juniper also indirectly infringes the '765 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '765 Accused Products and causing the '765 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '765 Accused Products, such that the '765 patent is directly infringed.  The accused components within the '765 Accused Products are material to the invention of the '765 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '765 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '765 patent and with intent, or willful blindness, that they cause the direct infringement of the '765 patent.

161.    As described above, Juniper knew that NXP possessed patents, including the '765 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '765 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

162.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid

and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

163.    Juniper is utilizing the technology claimed in the '765 patent without paying a reasonable royalty.  Juniper is thus infringing the '765 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

164.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '765 patent.

165.    As a result of Juniper's infringement of the '765 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

## COUNT VII
### INFRINGEMENT OF U.S. PATENT NO. 9,083,401

166.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

167.    Juniper makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'401 Accused Product(s)").

168.    Juniper designs, makes, uses, sells, and/or offers for sale the '401 Accused Products in the United States.

169.    One or more Juniper subsidiaries and/or affiliates use the '401 Accused Products in regular business operations.

170.    Juniper has directly infringed and continues to directly infringe the '401 patent by, among other things, making, using, offering for sale, and/or selling the '401 Accused Products. The functionality recited in the '401 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '401 Accused Products infringe at least claim 1 of the '401 patent can be found in the chart attached hereto as Exhibit 18.

171.    The '401 Accused Products are available to businesses and individuals throughout the United States.

172.    The '401 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

173.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '401 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '401 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 18 applies each limitation of claim 1 of the '401 patent to the '401 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '401 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '401 patent.  Exhibit 18 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 18 that is mapped to the '401 Accused Products shall be

considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

174.    Juniper also indirectly infringes the '401 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '401 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

175.    Juniper has had knowledge of the '401 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '401 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

176.    Alternatively, Juniper has had knowledge of the '401 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '401 patent and knew of its infringement, including by way of this lawsuit.

177.    Juniper intended to induce patent infringement by third-party customers and users of the '401 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the '401 Accused Products would infringe the '401 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '401 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides

the '401 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '401 patent, including at least claim 1, and Juniper further advertises the '401 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '401 patent.  On information and belief, Juniper advertises all of the '401 Accused Products as complying with the 802.11ax Standard.[8]  By providing instruction and training to customers and end-users on how to use the '401 Accused Products in a manner that directly infringes one or more claims of the '401 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '401 patent.  Juniper engaged in such inducement to promote the sales of the '401 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '401 Accused Products to infringe the '401 patent.  Accordingly, Juniper has induced and continues to induce users of the '401 Accused Products to use the '401 Accused Products in their ordinary and customary way to infringe the '401 patent, knowing that such use constitutes infringement of the '401 patent.

178.    Juniper also indirectly infringes the '401 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '401 Accused Products and causing the '401 Accused Products to be manufactured, used, sold, and offered for sale contribute to

---

[8]    *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

customers' and end-users' use of the '401 Accused Products, such that the '401 patent is directly infringed.  The accused components within the '401 Accused Products are material to the invention of the '401 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '401 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '401 patent and with intent, or willful blindness, that they cause the direct infringement of the '401 patent.

179.    As described above, Juniper knew that NXP possessed patents, including the '401 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '401 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

180.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

181.    Juniper is utilizing the technology claimed in the '401 patent without paying a reasonable royalty.  Juniper is thus infringing the '401 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

182.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '401 patent.

183.    As a result of Juniper's infringement of the '401 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

## COUNT VIII
## INFRINGEMENT OF U.S. PATENT NO. 10,200,096

184.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

185.    Juniper makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'096 Accused Product(s)").

186.    Juniper designs, makes, uses, sells, and/or offers for sale the '096 Accused Products in the United States.

187.    One or more Juniper subsidiaries and/or affiliates use the '096 Accused Products in regular business operations.

188.    Juniper has directly infringed and continues to directly infringe the '096 patent by, among other things, making, using, offering for sale, and/or selling the '096 Accused Products. The functionality recited in the '096 patent has been incorporated into the 802.11ax Standard.   A

detailed description as to why the '096 Accused Products infringe at least claim 1 of the '096 patent can be found in the chart attached hereto as Exhibit 19.

189.    The '096 Accused Products are available to businesses and individuals throughout the United States.

190.    The '096 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

191.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '096 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '096 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 19 applies each limitation of claim 1 of the '096 patent to the '096 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '096 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '096 patent.  Exhibit 19 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 19 that is mapped to the '096 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

192.    Juniper also indirectly infringes the '096 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '096 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

193.    Juniper has had knowledge of the '096 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '096 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

194.    Alternatively, Juniper has had knowledge of the '096 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '096 patent and knew of its infringement, including by way of this lawsuit.

195.    Juniper intended to induce patent infringement by third-party customers and users of the '096 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the '096 Accused Products would infringe the '096 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '096 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '096 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '096 patent, including at least claim 1, and Juniper further advertises the '096 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '096 patent.  On information and belief, Juniper advertises all of the '096 Accused Products as complying with the 802.11ax Standard.[9]  By providing instruction and

---

[9] *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last

training to customers and end-users on how to use the '096 Accused Products in a manner that directly infringes one or more claims of the '096 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '096 patent.  Juniper engaged in such inducement to promote the sales of the '096 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '096 Accused Products to infringe the '096 patent.  Accordingly, Juniper has induced and continues to induce users of the '096 Accused Products to use the '096 Accused Products in their ordinary and customary way to infringe the '096 patent, knowing that such use constitutes infringement of the '096 patent.

196.    Juniper also indirectly infringes the '096 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '096 Accused Products and causing the '096 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '096 Accused Products, such that the '096 patent is directly infringed.  The accused components within the '096 Accused Products are material to the invention of the '096 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '096 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '096 patent and with intent, or willful blindness, that they cause the direct infringement of the '096 patent.

---

accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap64-access-point.html (last accessed May 28, 2025).

197.    As described above, Juniper knew that NXP possessed patents, including the '096 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '096 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

198.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

199.    Juniper is utilizing the technology claimed in the '096 patent without paying a reasonable royalty.  Juniper is thus infringing the '096 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

200.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '096 patent.

201.    As a result of Juniper's infringement of the '096 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

<u>COUNT IX</u>
<u>INFRINGEMENT OF U.S. PATENT NO. 8,238,859</u>

202.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

203.    Juniper makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard") and are certified as such by the Wi-Fi Alliance, including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'859 Accused Product(s)").

204.    Juniper designs, makes, uses, sells, and/or offers for sale the '859 Accused Products in the United States.

205.    One or more Juniper subsidiaries and/or affiliates use the '859 Accused Products in regular business operations.

206.    Juniper has directly infringed and continues to directly infringe the '859 patent by, among other things, making, using, offering for sale, and/or selling the '859 Accused Products. The functionality recited in the '859 patent has been incorporated into the 802.11ax Standard. A detailed description as to why the '859 Accused Products infringe at least claim 1 of the '859 patent can be found in the chart attached hereto as Exhibit 20.

207.    The '859 Accused Products are available to businesses and individuals throughout the United States.

208.    The '859 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

209.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '859 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '859 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 20 applies each limitation of claim 1 of the '859 patent to the '859 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '859 Accused Products obtained through discovery.   This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '859 patent.  Exhibit 20 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 20 that is mapped to the '859 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

210.    Juniper also indirectly infringes the '859 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '859 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

211.    Juniper has had knowledge of the '859 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.   Alternatively, Juniper has had knowledge of the '859 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

212.    Alternatively, Juniper has had knowledge of the '859 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '859 patent and knew of its infringement, including by way of this lawsuit.

213.    Juniper intended to induce patent infringement by third-party customers and users of the '859 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the '859 Accused Products would infringe the '859 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '859 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '859 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '859 patent, including at least claim 1, and Juniper further advertises the '859 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '859 patent.  On information and belief, Juniper advertises all of the '859 Accused Products as complying with the 802.11ax Standard.[10]  By providing instruction and training to customers and end-users on how to use the '859 Accused Products in a manner that directly infringes one or more claims of the '859 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '859 patent.  Juniper engaged in such inducement to promote the sales of the '859 Accused Products, e.g., through Juniper user manuals,

---

[10]    *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/ products/access-points/ap64-access-point.html (last accessed May 28, 2025).

product support, marketing materials, and training materials to actively induce the users of the '859 Accused Products to infringe the '859 patent. Accordingly, Juniper has induced and continues to induce users of the '859 Accused Products to use the '859 Accused Products in their ordinary and customary way to infringe the '859 patent, knowing that such use constitutes infringement of the '859 patent.

214. Juniper also indirectly infringes the '859 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '859 Accused Products and causing the '859 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '859 Accused Products, such that the '859 patent is directly infringed. The accused components within the '859 Accused Products are material to the invention of the '859 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '859 patent. Juniper has performed and continues to perform these affirmative acts with knowledge of the '859 patent and with intent, or willful blindness, that they cause the direct infringement of the '859 patent.

215. As described above, Juniper knew that NXP possessed patents, including the '859 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '859 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

216.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

217.    Juniper is utilizing the technology claimed in the '859 patent without paying a reasonable royalty.  Juniper is thus infringing the '859 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

218.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '859 patent.

219.    As a result of Juniper's infringement of the '859 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

## COUNT X
## INFRINGEMENT OF U.S. PATENT NO. 8,265,573

220.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

221.    Juniper makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard") with the 6E extension, including but not limited to the following products: AP24 Access Point, AP34 Access Point, AP45 Access Point, AP47 Access Point, and the AP64 Access Point (collectively, the "'573 Accused Product(s)").

222.    Juniper designs, makes, uses, sells, and/or offers for sale the '573 Accused Products in the United States.

223.    One or more Juniper subsidiaries and/or affiliates use the '573 Accused Products in regular business operations.

224.    Juniper has directly infringed and continues to directly infringe the '573 patent by, among other things, making, using, offering for sale, and/or selling the '573 Accused Products. The functionality recited in the '573 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '573 Accused Products infringe at least claim 12 of the '573 patent can be found in the chart attached hereto as Exhibit 21.

225.    The '573 Accused Products are available to businesses and individuals throughout the United States.

226.    The '573 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

227.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '573 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '573 patent, including at least claim 12 pursuant to 35 U.S.C. § 271(a).  Exhibit 21 applies each limitation of claim 12 of the '573 patent to the '573 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '573 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '573 patent.  Exhibit 21 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 21 that is mapped to the '573 Accused Products shall be

considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

228.    Juniper also indirectly infringes the '573 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '573 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

229.    Juniper has had knowledge of the '573 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '573 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

230.    Alternatively, Juniper has had knowledge of the '573 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '573 patent and knew of its infringement, including by way of this lawsuit.

231.    Juniper intended to induce patent infringement by third-party customers and users of the '573 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the accused products would infringe the '573 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '573 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '573

Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '573 patent, including at least claim 12, and Juniper further advertises the '573 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '573 patent.  On information and belief, Juniper advertises all of the '573 Accused Products as complying with the 802.11ax Standard.[11]  By providing instruction and training to customers and end-users on how to use the '573 Accused Products in a manner that directly infringes one or more claims of the '573 patent, including at least claim 12, Juniper specifically intended to induce infringement of the '573 patent.  Juniper engaged in such inducement to promote the sales of the '573 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '573 Accused Products to infringe the '573 patent.  Accordingly, Juniper has induced and continues to induce users of the '573 Accused Products to use the '573 Accused Products in their ordinary and customary way to infringe the '573 patent, knowing that such use constitutes infringement of the '573 patent.

232.    Juniper also indirectly infringes the '573 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '573 Accused Products and causing the '573 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '573 Accused Products, such that the '573 patent is directly

---

[11] *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap64-access-point.html (last accessed May 28, 2025).

infringed.  The accused components within the '573 Accused Products are material to the invention of the '573 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '573 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '573 patent and with intent, or willful blindness, that they cause the direct infringement of the '573 patent.

233.    As described above, Juniper knew that NXP possessed patents, including the '573 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '573 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

234.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

235.    Juniper is utilizing the technology claimed in the '573 patent without paying a reasonable royalty.  Juniper is thus infringing the '573 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

236.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '573 patent.

237.    As a result of Juniper's infringement of the '573 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

### COUNT XI
### INFRINGEMENT OF U.S. PATENT NO. 9,596,648

238.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

239.    Juniper makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AP12 Access Point, AP24 Access Point, AP32 Access Point, AP33 Access Point, AP34 Access Point, AP43 Access Point, AP45 Access Point, AP47 Access Point, AP63 Access Point, and the AP64 Access Point (collectively, the "'648 Accused Product(s)").

240.    Juniper designs, makes, uses, sells, and/or offers for sale the '648 Accused Products in the United States.

241.    One or more Juniper subsidiaries and/or affiliates use the '648 Accused Products in regular business operations.

242.    Juniper has directly infringed and continues to directly infringe the '648 patent by, among other things, making, using, offering for sale, and/or selling the '648 Accused Products. The functionality recited in the '648 patent has been incorporated into the 802.11ax Standard.   A

detailed description as to why the '648 Accused Products infringe at least claim 1 of the '648 patent can be found in the chart attached hereto as Exhibit 22.

243.    The '648 Accused Products are available to businesses and individuals throughout the United States.

244.    The '648 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

245.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '648 Accused Products, Juniper has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '648 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 22 applies each limitation of claim 1 of the '648 patent to the '648 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '648 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of Juniper infringe the identified claim or any other claims of the '648 patent.  Exhibit 22 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 22 that is mapped to the '648 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

246.    Juniper also indirectly infringes the '648 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, Juniper advertises and encourages end users to utilize the '648 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

247.    Juniper has had knowledge of the '648 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, Juniper has had knowledge of the '648 patent since at least April 15, 2025, when Velocity sent Juniper a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting Juniper to take a license to Velocity's patent portfolio, including the patents-in-suit.

248.    Alternatively, Juniper has had knowledge of the '648 patent since at least service of this Complaint or shortly thereafter, and Juniper knew of the '648 patent and knew of its infringement, including by way of this lawsuit.

249.    Juniper intended to induce patent infringement by third-party customers and users of the '648 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Juniper specifically intended and was aware that the normal and customary use of the '648 Accused Products would infringe the '648 patent.  Juniper performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '648 patent and with the knowledge that the induced acts would constitute infringement.  For example, Juniper provides the '648 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '648 patent, including at least claim 1, and Juniper further advertises the '648 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '648 patent.  On information and belief, Juniper advertises all of the '648 Accused Products as complying with the 802.11ax Standard.[12]  By providing instruction and

---

[12]    *AP12 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap12-access-point.html (last accessed May 28, 2025) (advertising Wi-Fi 6 capabilities for the AP12, AP32, and AP33 Access Points); *AP24 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap24-access-point.html (last

training to customers and end-users on how to use the '648 Accused Products in a manner that directly infringes one or more claims of the '648 patent, including at least claim 1, Juniper specifically intended to induce infringement of the '648 patent.  Juniper engaged in such inducement to promote the sales of the '648 Accused Products, e.g., through Juniper user manuals, product support, marketing materials, and training materials to actively induce the users of the '648 Accused Products to infringe the '648 patent.  Accordingly, Juniper has induced and continues to induce users of the '648 Accused Products to use the '648 Accused Products in their ordinary and customary way to infringe the '648 patent, knowing that such use constitutes infringement of the '648 patent.

250.    Juniper also indirectly infringes the '648 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  Juniper's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '648 Accused Products and causing the '648 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '648 Accused Products, such that the '648 patent is directly infringed.  The accused components within the '648 Accused Products are material to the invention of the '648 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Juniper to be especially adapted for use in infringement of the '648 patent.  Juniper has performed and continues to perform these affirmative acts with knowledge of the '648 patent and with intent, or willful blindness, that they cause the direct infringement of the '648 patent.

---

accessed May 28, 2025); *AP45 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap45-access-point.html (last accessed May 28, 2025); *AP64 Access Point*, JUNIPER WEBSITE, *available at*: https://www.juniper.net/us/en/products/access-points/ap64-access-point.html (last accessed May 28, 2025).

251.    As described above, Juniper knew that NXP possessed patents, including the '648 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Juniper has also known that Velocity was the owner by assignment of the '648 patent since at least April 15, 2025, when Velocity sent a letter to Juniper explaining it owned patents essential to the implementation of the 802.11ax Standard.

252.    Juniper did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to Juniper's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, Juniper willfully blinded itself to its infringement of the patents-in-suit.  Juniper believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

253.    The '648 patent is well-known within the industry as demonstrated by multiple citations to the '648 patent in published patents and patent applications assigned to technology companies and academic institutions.  Juniper is utilizing the technology claimed in the '648 patent without paying a reasonable royalty.  Juniper is infringing the '648 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

254.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '648 patent.

255.    As a result of Juniper's infringement of the '648 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Juniper's

infringement, but in no event less than a reasonable royalty for the use made of the invention by Juniper together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Velocity respectfully requests that this Court enter:

A.   A judgment in favor of Plaintiff that Juniper has infringed, either literally and/or under the doctrine of equivalents, the '570, '213, '832, '343, '870, '765, '401, '096, '859, '573, and '648 patents;

B.   An award of damages resulting from Juniper's acts of infringement in accordance with 35 U.S.C. § 284;

C.   A judgment and order finding that Juniper's infringement was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate within the meaning of 35 U.S.C. § 284 and awarding enhanced damages to Plaintiff.

D.   A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding reasonable attorneys' fees to Plaintiff against Juniper.

E.   Any and all other relief to which Plaintiff may show itself to be entitled.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Velocity requests a trial by jury of any issues so triable by right.

Dated:  July 9, 2025

Respectfully submitted,

*/s/  Daniel P. Hipskind*
Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
Erin E. McCracken (CA SB No. 244523)
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com
E-mail: eem@bergerhipskind.com

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com

*Attorneys for Velocity Communication Technologies, LLC*